UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cheryl Prasol,

    Plaintiff,                                                Case No. 09-10248

v.                                                  Honorable Sean F. Cox

Cattron-Theimeg, Inc., *et al.*

    Defendants.
_____/

## **OPINION & ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Cheryl Prasol brought this product liability action against Defendants for an injury allegedly caused by the defective design of a crane remote control. Defendants are Cattron-Theimeg, Inc. ("Cattron") and other related manufacturers of remote controls for the operation of overhead cranes. The matter is currently before the Court on Defendants' Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral argument on November 18, 2010. For the following reasons, the Court shall GRANT in part and DENY in part Defendants' Motion for Summary Judgment.

### BACKGROUND

Plaintiff filed this action on January 22, 2009, alleging two counts: 1) Negligence Against Defendants; and 2) Strict Liability Against Defendants. Defendants filed their answer to Plaintiff's complaint on February 10, 2009 and their Amended Answer on March 2, 2009. (Docket Entry Nos. 4, 13).

After the close of discovery, Defendants filed a motion for summary judgment. (Docket

Entry No. 25). Pursuant to this Court's practice guidelines, Defendants' motion and supporting brief included a separate document entitled Defendants' Statement of Material Facts Not in Dispute (Docket Entry No. 25-1). Plaintiff filed her response to Defendants' Motion for Summary Judgment, and her supporting brief included "Plaintiff's Response to Defendants' Statement of Material Facts." (Docket Entry No. 29-1). The following material facts are gleaned from the parties' statements and the evidence submitted by the parties.

Plaintiff began her employment as a crane operator with Michigan Seamless Tube in October, 2006. (Docket Entry No. 25-1 at ¶ 2). She had no prior experience as a crane operator before her employment with Michigan Seamless Tube. *Id*. at ¶ 3. Plaintiff's job duties included wrapping bundles of steel tubes with chains and moving the bundles using an overhead crane. (Docket Entry No. 29-1 at 34).

On November 16, 2006, three weeks into her employment, Plaintiff injured her left leg during the course of her work. (Docket Entry No. 25-1 at ¶ 5). Plaintiff alleges that while lifting a bundle of steel tubes with a crane, excess chain from the load of steel struck her on the waist and landed on the crane remote control box, causing the controls to activate and drop the steel tubes on her legs. (Docket Entry No. 29 at 8). Plaintiff suffered serious leg injuries. (Docket Entry No. 29 at 3).

Plaintiff's employer discarded the particular remote control box that Plaintiff was using at the time of her injury. (Docket Entry No. 25 at ¶ 13). Plaintiff does not remember the manufacturer of the specific control box she used, but she was able to identify a same or similar remote control box from a photograph. (Docket Entry No. 25-3 at ¶ 6); (Docket Entry No. 29-2 at 98). She also alleges that the control box used at the time of the injury was manufactured by

Defendant Vectran, a company that manufactured overhead crane remote controls and was later acquired by Defendant Cattron. (Docket Entry No. 25 at 5).

## STANDARD OF REVIEW

Summary judgment is proper where "there is no genuine issue as to any material fact" and where the moving party is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment has the initial burden of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Plaintiff's complaint alleges one count of "Negligence Against Defendants" and one count of "Strict Liability Against Defendants." (Docket Entry No. 1 at 3, 5). Michigan, however, has adopted a pure-negligence, risk-utility test for product liability actions based upon defective designs. *Prentis v. Yale Mfg. Co.* 421 Mich. 670, 691 (1984). The claim of strict liability is no longer recognized for actions based on defective design. Thus, the Court GRANTS Defendants' Motion for Summary Judgment as it relates to Plaintiff's Count II, "Strict Liability Against Defendants."

3

**I.     Plaintiff Has Proven A Prima Facie Case Of Negligence.**

Plaintiff claims that the Vectran remote control unit that she was using on the date of her injury had a defective design, and that this defective design caused her injuries. First, the Court shall address Defendants' contention that Plaintiff has not proven a prima facie case of negligence.

The Sixth Circuit discussed Michigan's risk-utility test for design defect claims in *Peck v. Bridgeport Machines*, 237 F. 3d 614 (6th Cir. 2001). The court explained:

> [T]o survive a motion for summary judgment, the plaintiff must produce evidence showing:
>
> (1) that the severity of the injury was foreseeable by the manufacturer;
>
> (2) that the likelihood of occurrence of [the Plaintiff's] injury was foreseeable by the manufacturer at the time of distribution of the product;
>
> (3) that there was a reasonable alternative design available;
>
> (4) that the available alternative design was practicable;
>
> (5) that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product;
>
> (6) that commission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Id*. at 617-18 (citing *Hollister v. Dayton*, 201 F. 3d 731, 738 (6th Cir. 2000).)

With regard to the first and second requirements, Plaintiff provided the deposition testimony of Robert Aiken ("Aiken"), a forty-year employee and consulting engineer for Cattron. Aiken testified that Vectran was a significant supplier of crane remote control boxes to

4

the steel industry and other industrial markets. (Docket Entry No. 29-4 at 7). He also testified that he had been to various work sites and observed operations. *Id*. at 46. Aiken also stated that Vectran/Cattron was aware that businesses that utilize the crane remote control boxes also use chains to secure and move loads with the cranes. *Id*. Additionally, Plaintiff's expert engineer, Dr. J. Kenneth Blundell ("Dr. Blundell"), stated in an affidavit that "[i]t is reasonably anticipated that an object in an industrial application could fall onto the controls given the exposed nature of the controls designed by the defendant." (Docket Entry No. 29-5 at ¶14). Dr. Blundell also explained, "It goes without saying that the severity of injury from an inadvertent application of an industrial overhead crane could cause serious injury or death." *Id*. at ¶17. The statements made by Aiken and Dr. Blundell show that Defendants had knowledge of the use its products, as well as the familiarity of the environments in which these products are used. These statements also tend to show that the severity and likelihood of injury from the use of Defendants' crane remote controls, such as the one endured by Plaintiff in this case, was foreseeable by Defendants.

Plaintiff has also produced evidence with regard to requirements three through six of Michigan's risk-utility test. The pertinent paragraphs of Dr. Blundell's affidavit reads:

> 6. The Vectran wireless control box has a "handle" that purports to act as a "guard bar" and is inadequate in design.
> 7. The design fails to prevent objects from vertically falling on to the control levers and inadvertently activating the crane.
> 8. The design of the "guard bar" is therefore inadequate in size and shape and not reasonably safe.
> 9. A simple guard that surrounds the controls could have prevented this from happening.
> 10. This simple guard could have been utilized by Defendants at the time the remote control was manufactured.
> 11. This guard would not compromise the usefulness or desirability of the product as it changes none of the functions of the remote.
> 12. The design utilized by Defendants was defective and

            unreasonably dangerous when it left the control of the manufacturer.
13.    The "guard" was defective and unreasonably dangerous, a simple guard built around the controls would prevent the inadvertent activation of the crane and would render the control box reasonably safe.
14.    It is reasonably anticipated that an object in an industrial application could fall onto the controls given the exposed nature of the controls designed by the defendant. In comparison, it is an unlikely event that an object would be able to contact the controls if surrounded on three sides and the forth side covered partially by the operator's hands and body.
15.    It would require only a small amount of material to build the "shield" as opposed to the "guard bar" and I estimate the cost to be no more than $5-10 per unit.

*Id*.

      These statements by Dr. Blundell indicate that there was a reasonable alternative design that was practicable, feasible, and would have made Defendants' product reasonably safe. Dr. Blundell's statements also indicate that the availability of a safer alternative design (the "shield") rendered Defendants' product not reasonably safe. Therefore, Plaintiff has met the six requirements of Michigan's risk-utility test for a prima facie case for negligence due to a defective design, as required by *Peck*.

## II.    Plaintiff Does Not Have To Produce The Specific Unit At Issue.

      Defendants also contend that the Michigan Product Liability Statute requires Plaintiff to produce the specific unit that Plaintiff was using at the time of the accident. Defendants' cite sections (1) and (2) of the statute, which read:

> (1) It shall be admissible as evidence in a product liability action that the production of the product was in accordance with the generally recognized and prevailing nongovernmental standards in existence **at the time the specific unit of the product was sold or delivered** by the defendant to the initial purchaser or user.

> (2) In a product liability action brought against a manufacturer or seller for harm allegedly caused by a production defect, the manufacturer or seller is not liable unless the plaintiff establishes that the product was not reasonably safe **at the time the specific unit of the product left the control of the manufacturer** or seller and that, according to generally accepted production practices **at the time the specific unit of the product left the control of the manufacturer** or seller, a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others. An alternative production practice is practical and feasible only if the technical, medical, or scientific knowledge relating to production of the product, **at the time the specific unit of the product left the control of the manufacturer** or seller, was developed, available, and capable of use in the production of the product and was economically feasible for use by the manufacturer. Technical, medical, or scientific knowledge is not economically feasible for use by the manufacturer if use of that knowledge in production of the product would significantly compromise the product's usefulness or desirability.

M.C.L. § 600.2946 (2000) (emphasis added).

Defendants' interpretation of the statute is misplaced. The statute does not state that a plaintiff in a product liability suit is required to identify a specific unit. Rather, the statute references "***the time*** the specific unit of the product left the control of the manufacturer." *Id*. (emphasis added). A plaintiff can identify a period of time in which a specific product was manufactured without requiring the plaintiff to produce the actual, specific unit. In the absence of the specific product at issue, a Michigan products liability plaintiff can show liability through expert testimony and circumstantial evidence. *See Drooger v. Carlisle Tire & Wheel Co.*, 2006 WL 1008719 at *5 (W.D. Mich. 2006).

### III. Plaintiff's Claim Is Not Purely Speculation And Conjecture.

Next, Defendants challenge Plaintiff's allegation that a defective design by Vectran is the

cause of Plaintiff's accident. Defendants contend that this conclusion is pure speculation and conjecture, and therefore summary judgment is appropriate. (Docket Entry No. 25 at 16). In support, Defendants cite *Skinner v. Square Deal Co.*, in the which the court explained:

> [It is not] sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.... The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

445 Mich. 153, 164-65 (1994).

The *Skinner* court also stated, however, that "the plaintiff is not required to produce evidence that positively eliminates every other potential cause. Rather, the plaintiff's evidence is sufficient if it 'establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support.'" *Id*. at 159-60.

Plaintiff in this case has established a logical sequence of cause and effect from which the jury can conclude that, more likely than not, Plaintiff's injuries were caused by a defect in the remote control box design. Plaintiff has testified that she had two hands on the controls, she was struck by a chain, she let go of the remote control box, and the chain landed on her remote control box, causing it to activate the controls of the crane. (Docket Entry No. 29-3 at 2). As a result, the crane dropped the load of steel tubes on the Plaintiff. Defendants, on the other hand,

8

suggest alternative scenarios. Defendants suggest that when the chain struck Plaintiff, her hands may have unintentionally activated the controls, or alternatively, she may have dropped the load because she was an inexperienced crane operator. (Docket Entry No. 25 at 10). While Defendants' scenarios are plausible, in viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party, Plaintiff's theory of the cause-in-fact of the injury is more than just conjecture.

IV. **Plaintiff Has Provided Evidence That Vectran Manufactured The Remote Control Box At Issue.**

Defendants also contend that M.C.L. § 600.5805(13) bars Plaintiff from presuming that Vectran manufactured the remote control box that Plaintiff used at the time of the accident because it was likely manufactured sometime between 1985 and 1995. (Docket Entry No. 29-4 at 26). The statute states that "[t]he period of limitations is 3 years for a products liability action. However, in the case of a product that has been in use for not less than 10 years, the plaintiff, in proving a prima facie case, shall be required to do so without benefit of any presumption." M.C.L. § 600.5805(13). The statute is vague as to exactly what type of "presumption" the plaintiff is barred from applying.

In order to give meaning to the statute, Defendants cite a wrongful death case, *Johnson v. Austin*, in which the Michigan Supreme Court generally explained that courts may grant a plaintiff the benefit of a presumption when a plaintiff cannot produce evidence of a presumed fact and the presumption is necessary to avoid an impasse. 406 Mich. 420 (1979). In *Johnson*, the plaintiff was killed in a hit-and-run incident, and the plaintiff's family brought a wrongful death suit against the Secretary of State because the negligent driver could not be identified. *Id*.

9

at 430. It was clear that the plaintiff was struck by an automobile, but there were no witnesses to the accident. The Court explained that the fact that the defendant fled the scene, despite his statutory duty to remain, gives rise to a presumption of negligence on the part of the defendant. *Id*. at 433.

Defendants claim that Plaintiff is not entitled to such a presumption of negligence on the part of the Defendants because of § 600.5805(13). *Johnson*, however, can be distinguished from this case. In *Johnson,* the plaintiff could not provide any evidence of the negligence of the unidentified driver. In this case the Plaintiff has provided evidence that Vectran manufactured the remote control box used by Plaintiff. First, unlike in *Johnson*, Plaintiff is available to testify and has testified that the remote control box that she used was the same or is similar to the Vectran remote control box shown in the images attached to Defendants' motion for summary judgment. (Docket Entry No. 29-2; Docket Entry. No. 25-3 at ¶ 6). Second, Defendants' own consulting engineer, Robert Aiken, testified that it is "[m]ore likely than not a commercial product made by a competitive --competitor to Vectran would not run that crane." (Docket Entry No. 29-2 at 31). In fact, the *Johnson* court explained, "If contrary evidence is offered, the trier is free from the compulsion of the presumption and weighs all the evidence, including the evidence of the basic fact. The trier is free to infer the existence of the ultimate fact, but the law does not require it." *Johnson*, 406 Mich. at 441.

## V. It Is Irrelevant That The Safety Guard Worked As Intended.

Defendants' fifth argument is that summary judgment is proper because the safety guard across the top of the control box performed as it was intended. Defendants contend that the chain landed on the safety guard and not on the controls. Despite Plaintiff's testimony to the

contrary, Defendants also argue it was the Plaintiff who activated the crane when she was struck by the chain. However, whether the safety guard performed as it was supposed to is irrelevant. The performance of the original design is not one of the requirements necessary to establish a prima facie case for a design defect claim, as outlined in *Peck*. *See Peck*, 237 F. 3d 614 (6th Cir. 2001). As noted in part I, *supra*, Plaintiff has fulfilled the six requirements for Michigan's risk-utility test for design defect claims.

VI. **The Court Should Disregard A Portion of Plaintiff's Affidavit For The Purposes Of Summary Judgment Review.**

Defendants also allege that the Court should reject Plaintiff's affidavit as evidence when reviewing Defendants' motion for summary judgment because it was filed after Defendants' motion for summary judgment and contradicts her earlier deposition testimony. *See Reid v. Sears Roebeck & Co.*, 790 F. 2d 453 (1986). Only paragraph nine of the affidavit contradicts Plaintiff's deposition testimony. Paragraph nine states that Plaintiff immediately took her hands off the remote when she was struck by the chain. (Docket Entry No. 29-3 at ¶ 9). A number of times during her deposition, however, Plaintiff stated that she did not remember anything immediately after being struck by the chain. (Docket Entry No. 29-2 at 87-89). These two statements are contradictory. The remainder of Plaintiff's affidavit does not contradict her deposition testimony. Rather, it merely expresses her theory as to what must have logically happened, based upon the circumstances. Therefore, the Court should disregard only the portion of Plaintiff's affidavit that contradicts her deposition testimony. Notwithstanding this omission from Plaintiff's affidavit, Plaintiff has still sufficiently alleged a prima facie case for negligence based upon Michigan's risk-utility test.

CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment. The motion is **GRANTED** as it relates to Plaintiff's Count II, "Strict Liability Against Defendants" and is **DENIED** as it relates to Plaintiff's Count I, "Negligence Against Defendants." Plaintiff has made a prima facie case for a defective design negligence claim.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: December 2, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 2, 2010, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager
