UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cheryl Prasol,

   Plaintiff,           Case No. 09-10248

v.                Honorable Sean F. Cox

Cattron-Theimeg, Inc., *et al.*

   Defendants.
_____/

## OPINION & ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff Cheryl Prasol brought this product liability action against Defendants for an injury allegedly caused by the defective design of a crane remote control. Defendants are Cattron-Theimeg, Inc. ("Cattron") and other related manufacturers of remote controls for the operation of overhead cranes. The matter is currently before the Court on Defendants' motion for judgment as a matter of law, pursuant to FED. R. CIV. P. 50. The Court heard oral argument on Defendant's motion after the close of Plaintiff's proofs on June 30, 2011. For the reasons set forth below, the Court shall DENY Defendants' motion for judgment as a matter of law.

## BACKGROUND

Plaintiff began her employment as a crane operator with Michigan Seamless Tube in October, 2006. She had no prior experience as a crane operator before her employment with Michigan Seamless Tube. Plaintiff's job duties included moving bundles of steel tubes using an overhead crane, operated by a remote control that hung at her waist. The remote control that Plaintiff used consisted of metal box with four control levers on the top of the remote.

1

Extending over the top of the controls was a "guard bar."

On November 16, 2006, three weeks into her employment, Plaintiff severely injured her left leg during the course of her work. Plaintiff alleges that while lifting a bundle of steel tubes with a crane, excess chain from the load of steel struck her chest and landed on the crane remote control box, causing the controls to inadvertently activate the crane and drop the steel tubes on her legs. The parties do not dispute that Plaintiff suffered serious leg injuries.

## STANDARD OF REVIEW

FED. R. CIV. P. 50 provides, in pertinent part:

> (a)   Judgment as a Matter of Law.
>
>> (1)   In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>>
>>> (A)   resolve the issue against the party; and
>>>
>>> (B)   grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>>
>> (2)   Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

FED. R. CIV. P. 50.

"In entertaining a motion for judgment as a matter of law, the court is to review all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence." *Jackson v. FedEx*

2

*Corporate Services, Inc.*, 518 F.3d 388, 392 (6th Cir. 2008) (citations omitted). "In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir.1999) (citations and quotations omitted).

ANALYSIS

In order to determine whether a plaintiff has made a *prima facie* for a defective design claim, the Court must apply Michigan's risk-utility test as provided in *Peck v. Bridgeport Machines*, 237 F. 3d 614 (6th Cir. 2001).  In *Peck*, the court explained:

> [T]o survive a motion for summary judgment, the plaintiff must produce evidence showing:
>
> (1) that the severity of the injury was foreseeable by the manufacturer;
>
> (2) that the likelihood of occurrence of [the Plaintiff's] injury was foreseeable by the manufacturer at the time of distribution of the product;
>
> (3) that there was a reasonable alternative design available;
>
> (4) that the available alternative design was practicable;
>
> (5) that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product;
>
> (6) that commission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

*Id.* at 617-18 (citing *Hollister v. Dayton*, 201 F. 3d 731, 738 (6th Cir. 2000).)

In moving for judgment as a matter of law, Defendant makes the following four claims:

3

(1) Plaintiff did not make a *prima facie* case for negligent design because Plaintiff failed to demonstrate the magnitude of the risks involved with using the remote control with its present design; (2) Plaintiff did not make a *prima facie* case for negligent design because Plaintiff failed to present a reasonable, alternative design; (3) Plaintiff's theory of how Plaintiff's injury occurred is pure speculation and conjecture; and (4) If the chain landed on the guard of the remote, as Plaintiff has testified, then Defendant's design of the guard cannot be the proximate cause of Plaintiff's injuries.

I.      **Plaintiff Presented Evidence Regarding the Magnitude of the Risks Involved.**

First, Defendant asserts that Plaintiff failed to demonstrate the magnitude of the risks involved with the use of the current remote control design.  In order to demonstrate the risks involved, a plaintiff must demonstrate elements one and two of the risk-utility test.  *Peck*, 237 F.3d at 619.  Accordingly, Plaintiff must demonstrate that the severity of the injury, as well as the likelihood of its occurrence, were foreseeable by the Defendant.

Plaintiff presented the testimony of Dr. Kenneth Blundell, retired Professor of mechanical engineering at the University of Missouri.  In addition to discussing his expertise in mechanical design and machine safety, Dr. Blundell testified as to his vast experience in industrial plants, including his familiarity with steel manufacturing operations.  In forming his opinions, Dr. Blundell reviewed the depositions of Plaintiff and Robert Aiken, the corporate representative for Defendant.  Dr. Blundell also reviewed 50 or 60 photographs of the work area of the plant and of a Vectran remote control similar to one that was involved in the accident. Additionally, the Court heard the following exchange between Plaintiff's counsel and Dr. Blundell:

4

> Q:    Do you have any sort of opinions on the handle that is currently on the remote?
>
>                     * * *
>
> A:    The fundamental one is that I believe that handle, as it appears on exhibit 16, is inadequate to provide a reasonable guard that would prevent inadvertent or accidental activation of the toggle switches.
>
> Q:    And from your industrial design experience, as well as your experience from actually working in the industry when you were in England, what would be a consequence of an incident of an inadvertently activated remote?
>
> A:    Well, with a remote control such as this that is controlling a crane, you could have very serious consequences because cranes are generally used to carry large weights around and if those controls were inadvertently activated, then it could result in serious injuries and possibly someone could get killed if that control box was activated when the operator wasn't not intending it to do that.
>
> Q:    And would a reasonable engineer understand this risk of serious injury, especially in the setting of a steel mill from the inadvertent activation of a remote?
>
> A:    I would certainly hope so.  I believe so.

Later, on redirect examination, Dr. Blundell stated, "The ideas of protecting controls particularity from gravity where something falls on to the controls, they have to put about in early World War I, so they're probably one-hundred years old."

Due to the nature of the accident in this case, the severity and likelihood of the injury involved are not difficult to present.  Plaintiff's injury allegedly occurred from an object falling on a remote control in a steel-tube manufacturing plant.  Dr. Blundell sufficiently presented the types of risks and hazards involved in an industrial manufacturing setting.  Based upon his expert testimony, and in viewing this evidence in a light most favorable to the Plaintiff, a reasonable jury could find that the severity of the injury in this case, as well as its likelihood of occurrence, were foreseeable by Defendant.

## II.    Plaintiff Has Presented a Reasonable Alternative Design.

Next, Defendant argues, as it did in its motion for summary judgment, that Defendant has failed to make a *prima facie* case for negligent design because Plaintiff has not presented an alternative reasonable design. Specifically, Defendant cites to the portion of the *Peck* opinion in which the court states that "an expert who testifies that a product could have been designed differently, but who has never made or seen the alternative design he proposes, and therefore has no idea of its feasibility, utility, or cost, does not make a *prima facie* case that a reasonable, practicable, and available alternative design was available."

In this case, Dr. Blundell proposed a very basic, alternative guard design that would shield the remote control on five sides, while leaving one side open for access to the remote control toggles. Dr. Blundell described his design as a shield that would extend over the top of the current guard bar that would prevent any falling object from coming in contact with the remote control toggles. The shield would cover the toggles from 4 sides (the bottom being already protected by the base of the remote), and would be produced from a material like lexan, which is a strong, durable plastic similar to plexiglass. Dr. Blundell stated that the shield would be at least a quarter of an inch thick and screwed to the box itself with a slot screw that can be tightened, but not removed.

Defendant's reliance on the requirement that an expert presenting an alternative design must have either made or seen the alternative design is misplaced for two reasons. First, while Dr. Blundell had not seen his alternative design on the type of remote control specific to this case, he described at least two different instances in which he had seen and used a shield similar to his design on other types of industrial remote controls. Second, Defendant's own corporate representative, Mr. Aiken (who has designed these type of remote controls for over 30 years),

6

conceded the feasability of Dr. Blundell's design. The Court heard the following testimony from

Mr. Aiken:

> Q:    It would be possible to attach that plexiglass to this remote?
> A:    It would be possible to attach plexiglass to the remote, yes.
> Q:    If you have the remote sitting out in front of you and
>        there's a shield would go over the top, and as Dr. Blundell
>        suggested you would put your hands inside, like this,
>        operate it, would that shield sitting right here and an object
>        fell on top of this remote, would that shield prevent it from
>        hitting those toggle switches?
> A:    If it's above the switches would it prevent something from
>        falling on to the switches?
> Q:    Yes.
> A:    Yes.

Dr. Blundell's proposed design is a very basic concept that did not require a complex

analysis for a reasonable juror, or the Defendant, to understand how it could reduce the risk of

injury posed by the current design. After hearing the testimony of Dr. Blundell and Mr. Aiken,

and viewing the pictures of the Vectran remote and current design of the guard bar, a reasonable

mind could conclude that Dr. Blundell's proposed design is reasonable, practicable, and feasible.

The pictures of the Vectran remote clearly show that the current design of the remote leaves the

control toggles open to contact from falling objects. A reasonable juror would find it readily

apparent that Dr. Blundell's design would protect these toggles from contact with other objects

Therefore, in viewing all the evidence in a light most favorable to the Plaintiff, Plaintiff has

presented a reasonable, alternative design.

**III.    Plaintiff's Theory of How Plaintiff's Injury Occurred is Not Pure Speculation or
         Conjecture.**

Defendant also contends that Plaintiff has failed to present evidence to support its theory

of causation. Plaintiff testified that, upon raising the load of steel tubes, excess chain that often

7

dangles below the load struck Plaintiff in the stomach-area and landed on the remote control box, causing the remote to inadvertently activate and drop the load of steel on Plaintiff. Defendant argues that this theory of causation is pure speculation and conjecture.

In support of this claim, Defendant directs the Court to *American & Foreign Ins. Co. v. General Elec. Co.,* 45 F.3d 135, (6th Cir. 1995), a manufacturing defect case involving an electrical short in a circuit breaker that allegedly sparked a fire in a school. In that case, the defendants challenged the sufficiency of the Plaintiff's evidence in relation to the cause of the fire at the school. The court in *American & Foreign Ins. Co.* stated that "[c]ausation cannot be established solely by conjecture, speculation, or surmise." *Id.* at 140.

To establish causation, the plaintiff in *American & Foreign Ins. Co.* relied solely on its expert's opinion that under normal operating conditions, "when arcing occurs, a circuit breaker should trip. . . approximately 50 percent of the time, give or take 25 percent." *Id.* Therefore, "the circuit breaker had up to a 75% chance of not tripping during arcing." *Id.* The Court held that "[w]here the evidence indicates that it is as likely that the incident was caused by factors other than those asserted, a verdict for the defendant is mandated since otherwise a verdict would be based on speculation and conjecture." *Id.*

Defendants also rely on *Skinner v. Square Deal Co.*, in the which the court explained:

> [It is not] sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred.... The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly

8

> balanced, it becomes the duty of the court to direct a verdict for the
> defendant.

445 Mich. 153, 164-65 (1994).

The *Skinner* court also stated, however, that "the plaintiff is not required to produce evidence that positively eliminates every other potential cause. Rather, the plaintiff's evidence is sufficient if it 'establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support.'" *Id*. at 159-60.

In *American & Foreign Ins. Co*, the court made its determination based upon an expert's statistical analysis that showed that there was as little as a 25 percent chance that the defendant's design of the circuit breaker was the cause of the accident. Based upon the nature of the defect in that case, there was no "witness" to the allegedly malfunctioning circuit breaker. The plaintiff in *American & Foreign Ins. Co.* presented no other evidence, testimony or otherwise, to show that the defendant's circuit breaker caused the fire. Thus, no reasonable jury could have determined that it was more likely than not that the defendant's circuit breaker malfunctioned.

In this case, the Court heard testimony from the injured Plaintiff, who testified, "I raised the load and a chain came whipping at me. It struck me in this area [Plaintiff pointed to her abdomen] and dropped down on my [remote control] box." Plaintiff also responded "no" when asked, "Is it possible when you got hit by that chain you activated those levers which dumped the load." Moreover, there was little to no evidence presented by Defendant to establish that it was more likely that Plaintiff's accident was caused by other factors.

Plaintiff has established a logical sequence of cause and effect from which a reasonable jury can conclude that, more likely than not, Plaintiff's injuries were caused by a defect in the

9

remote control design.  While other scenarios are plausible, in viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party, Plaintiff's theory of the cause-in-fact of the injury is more than just conjecture.

**IV.    A Reasonable Jury Could Find That Defendant's Current Guard Design Did Not Adequately Shield the Remote Controls.**

Finally, Defendant contends that, because Plaintiff testified that the chain landed on the remote control "guard bar," the current design of the bar could not have been the proximate cause of the accident.

In addition to the Plaintiff's testimony, discussed in part Part III, above, Plaintiff introduced three large photographs of a same, or similar, remote control as the one that Plaintiff was using on the day of her accident. These photographs, marked as Plaintiff's exhibits 16, 16-A, and 16-B, display the purported "guard" that currently runs over the top of the remote control toggles.  The pictures clearly display the current guard, which looks more like a handle than a protective shield.

By simply looking at the pictures of the remote, a reasonable juror could find that the guard does not adequately protect the toggles of the remote control.  As stated above, a reasonable juror could find that the present guard bar leaves the remote control toggles unshielded from falling objects.  Even if the chain landed on the guard, a reasonable juror could infer that the large chain could have landed on the guard and the controls.  In viewing these exhibits and Plaintiff's testimony in a light most favorable to the Plaintiff, a reasonably jury could find that, more likely than not, the cause of Plaintiff's accident was the chain hitting the toggles on the remote, inadvertently activating the crane, causing it to drop the steel tubes on Plaintiff.

10

CONCLUSION

For the reasons discussed above, the Court DENIES Defendant's motion for judgment as a matter of law.

IT IS SO ORDERED.

s/Sean F. Cox
SEAN F. COX
UNITED STATES DISTRICT JUDGE

Dated:  July 5, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 5, 2011, by electronic and/or ordinary mail.

s/Jennifer Hernandez
Case Manager

11