UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cheryl Prasol,

    Plaintiff,                      Case No. 09-10248

v.                                   Honorable Sean F. Cox

Cattron-Theimeg, Inc., *et al.*

    Defendants.
_____/

## OPINION & ORDER DENYING PLAINTIFF'S MOTION FOR MISTRIAL

Plaintiff Cheryl Prasol brought this product liability action against Defendants for an injury allegedly caused by the defective design of a crane remote control. Defendants are Cattron-Theimeg, Inc. ("Cattron") and other related manufacturers of remote controls for the operation of overhead cranes. Trial began on Tuesday, June 28, 2011. On July 8, 2011, during jury deliberations, Plaintiff's counsel made an oral motion for a mistrial. The Court heard oral argument on Plaintiff's motion the same day. For the reasons set forth below, the Court shall DENY Plaintiff's motion for a new trial.

### BACKGROUND

In this negligent design case, it is undisputed that Plaintiff was injured during the course of her employment while operating a crane used to transport a bundle of steel tubes. It has been Plaintiff's theory during the course of this trial that, while lifting a bundle of steel tubes with a crane, excess chain from the load of steel struck her chest and landed on the crane remote control box, causing the controls to inadvertently activate the crane and drop the steel tubes on her legs.

1

Plaintiff alleges that the remote control for the crane was negligently designed by Defendant because the remote control toggles were not sufficiently shielded from falling objects.

On Wednesday, July 6, 2011, while the jury was deliberating, the Court received a note from Juror # 6, Mr. Neil McClain. The note stated, "Judge Cox, I don't know if it makes any difference, but juror number one told us all that he went to a train yard and investigated the operation of a similar remote control. He used this knowledge to influence the rest of the jury." A few minutes later, the jury indicated that they had received a verdict. As a result of the note from Mr. McClain, the Court did not receive the verdict from the jury.

Upon receiving Mr. McClain's note, the Court interviewed Mr. McClain regarding the extraneous information that was improperly brought to the jury's attention, pursuant to Federal Rule of Evidence 606(b). Mr. McClain stated that while the jury was examining the remote control, which was introduced as an exhibit by Defendant, Juror # 1, Mr. Leo Denomy, began telling the other juror members that he had recently stopped at a train stop while in traffic and noticed that an employee from the train yard was using a remote control to move a locomotive engine. Mr. Donemy questioned the employee about the operations of the remote control.[1] Mr. McClain testified that Mr. Denomy stated that the remote control was similar to the remote used by Plaintiff during the time of her accident. The Court also learned that Mr. Denomy questioned the employee at the train station about the operation and safety features of the remote control. Mr. Denomy also relayed information to the other jurors that the levers of the remote control had to be pushed all the way down for the crane to operate. Of course, this information was not presented to the jury during the course of the trial.

---

[1] *See* trial transcript for Wednesday, July 6, 2011.

Mr. McClain also volunteered:

> Juror # 6: And there was a question amongst the jurors of how the controller operated and he insinuated that it operated one way, which we didn't have any proof to, but he said that he learned that from the train yard and that influenced the jury to make a decision – well, six of the eight.
>
> The Court: He insinuated that?
>
> Juror # 6: That the levers had to be pushed all the way down for the crane to operate instead of just upright position, which we didn't know. Once he presented that, the last juror, to swing the vote, decided.[2]

Shortly thereafter, the Court conducted *voir dire* on each individual juror, with the exception of Mr. Denomy. The Court questioned each juror as to what he or she heard Mr. Denomy state regarding his out-of-court, independent research. The Court found that some of the jurors heard Mr. Denomy's statements, some only partially heard Mr. Denomy's statements, and at least one juror did not hear Mr. Denomy's statements at all. The Court also learned that at least one juror cautioned Mr. Denomy that his statements were improper and that he should not be discussing his independent findings.

During the individual *voir dire*, the Court asked each juror whether they would disregard Mr. Denomy's statements and serve as fair and impartial jurors. Each juror responded that they could and would do so. Additionally, the Court asked each juror whether they would base their decision solely on what they had seen and heard in the courtroom. Each juror responded that they could and would do so.

After individually interviewing each juror, the Court gathered the entire jury as a whole.

---

[2] *See* rough draft Transcript of Testimony of Neil McClain on July 6, 2011.

The Court then excused Mr. Denomy as a juror in this case, and conducted *voir dire* on the entire remaining panel.  Again, the Court gave cautionary instructions to the jury.  The Court asked for a second time whether the jury would disregard any statements made by Mr. Denomy about his out-of-court research.  Each juror responded that he or she would, and again committed to deciding the case based solely on what they had seen and heard in the courtroom.[3]  The Court then directed the jury back to the jury room to continue with deliberations.

By the end of the day on Wednesday, July 6, 2011 the Jury had not yet reached a verdict.  The Court adjourned the trial until Friday, July 8, 2011.  When the jury reconvened, the Court conducted a third *voir dire* before allowing the jury to continue with deliberations.[4]  The Court asked the jury, "As you continue with deliberations, members of the jury, will you again commit to deciding this case solely on the evidence presented at trial in this courtroom, solely on what you've seen and heard in this courtroom only? And I need an answer, an individual answer. . ."  Each juror individually responded "yes" to this question.  Next, the Court asked, "Will you again commit to disregarding any statements made to you Wednesday, July 6, during deliberations by juror one, Mr. Denomy, regarding his observations regarding the remote control at a train stop last week?"  Each juror individually responded "yes" to this question.  Finally, the Court asked, "Is there anyone of you who feels, believes that you cannot disregard, set-aside juror number one's statement to you last Wednesday regarding his observations, conversations of a remote at a train stop last week and decide this case solely, again solely, on what you've seen and heard in this courtroom only? If so, please raise your hand."

---

[3]*See* Trial Transcript for July 6, 2011.

[4]*See* Trial Transcript for July 8, 2011 at approximately 9:15 A.M..

None of the jurors raised their hand in response to this question and the Court then directed the jury to return to deliberations.

## ANALYSIS

While the jury continued deliberating on Friday, July 8, Plaintiff's counsel moved for a mistrial.

With regard to extraneous information interjected to the jury, "[a]n investigation is improper where it 'amounts to additional evidence supplementary to that introduced during the trial.'" *Womble v. J.C. Penney*, 431 F.2d 985 (6th Cir. 1970). A trial court's decision on whether to grant a mistrial because of jury misconduct is reviewed on an abuse of discretion standard because the "trial judge is in the best position to determine the nature of the alleged jury misconduct." *United States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995); *See generally United States v. Turner*, 936 F.2d 221, 227 (6th Cir. 1991). Furthermore, the Sixth Circuit has stated that "[t]he district court is also in the best position to determine appropriate remedies for any demonstrated misconduct." *Copeland*, 51 F.3d at 613.

Furthermore, many circuits have held that when a party moves for a new trial "[i]n a civil case, the exposure of jurors of materials not admitted into evidence mandates a new trial only upon a showing that the materials are prejudicial to the unsuccessful party." *Peterson v. General Motors Corp.*, 904 F.2d 436, 440 (8th Cir. 1990); *Benna v. Reeder Flying Serv., Inc.*, 578 F.2d 269, 270-71 (9th Cir. 1978).

Plaintiff contends that she has been prejudiced by Mr. Denomy's interjection of extraneous information. Plaintiff's counsel insists that Mr. Denomy's statements are a "bell than cannot be un-rung" and that, according to Mr. McClain's testimony, at least one juror has been

5

swayed by Mr. Denomy's statements.

In support of her motion, Plaintiff directs the Court to *In re Beverly Hills fire Litig.*, 695 F.2d 207 (6th Cir. 1982). In that case, plaintiffs brought a concerted action claim against several manufacturers of "old technology" aluminum branch circuit wiring, alleging that the aluminum wiring caused a fire which destroyed the Beverly Hills Supper Club in Southgate, Kentucky. *Id*. at 210. Plaintiffs theory at trial was that the fire began in a portion of a room with an electrical outlet connected to aluminum branch circuit wiring. *Id*. Plaintiffs claimed that heat developed at the connection of the aluminum branch circuit wiring to the electrical socket, causing wooden studs in the wall to ignite and set fire to the wall. *Id*. at 211. A major aspect of plaintiffs' theory was that the aluminum wiring was more likely than copper wiring to cause a fire because aluminum wiring degenerates over a period of five to ten years, leading to overheating. *Id*.

Sometime during the trial, one of the jurors performed an independent experiment and investigated the condition of the aluminum wiring in his own home. *Id*. The juror found nothing wrong with his aluminum wiring, and found that although his aluminum wiring had been installed at least eleven years earlier, there was no evidence of degeneration. *Id*. at 211-12. This information contradicted plaintiffs' theory at trial. The juror relayed this information to the other jurors, and after the jury returned a verdict for defendants and the jurors were discharged, the juror wrote an anonymous letter to the *Kentucky Enquirer*, describing his independent investigation. *Id*. at 212.

The district court denied plaintiffs' motions for a mistrial and for a new trial because the "action by the juror appears to be of minor consequences" and did not require the setting aside of the verdict *Id*. The Sixth Circuit reversed the district court's decision and held:

6

> [T]he juror's letter made clear that the results of his investigation were a factor in his decisionmaking. While influence on a single juror may be enough to necessitate reversal and remand, *see Loveday, supra*, 273 F.2d at 500, the error is particularly grievous because a unanimous verdict was required and the juror communicated his findings to other jurors. We conclude that the controlling law permits no alternative to reversal.

*Id*. at 214.

The instant case, however, is distinguishable from *In re Beverly Hills*. First, a unanimous verdict is not needed in this case. An agreement of six of the eight jurors is needed for a verdict. Second, unlike the court in *In re Beverly Hills*, this Court received notice of the juror's misconduct *prior* to receiving a verdict. After receiving the note from Mr. McClain, the Court took a number of corrective measures, including dismissing Mr. Denomy as a juror, and giving cautionary instructions to the remaining jurors on three separate occasions.

The Court finds that this case is more similar to *Altman v. Bobcat Co.*, 349 Fed.Appx. 758 (3rd Cir. 2009). In *Altman*, the Third Circuit Court of Appeals affirmed a district court's judgment denying defendant's motion for a mistrial when the Court discovered juror misconduct *before* receiving a verdict and gave the jury cautionary instructions. The plaintiff in *Altman* sued Bobcat Company, a manufacturer of construction equipment, for injuries resulting from the negligent design of the operator compartment of a Bobcat loader. The plaintiff was injured after he inadvertently activated the Bobcat's backhoe when he hit the control lever with his knee. The plaintiff claimed that the control lever in the compartment was negligently designed because it did not have a safety guard to prevent inadvertent activation.

During deliberations, one of the jurors, Juror 73, revealed to the other jurors that she had conducted independent research during the trial by locating a Bobcat machine and sitting in the

operator compartment. She reported to the jurors that the cabin of the machine was "tight" and the foreperson notified the court of the incident.

The court dismissed Juror 73 and conducted *voir dire* of the remaining jurors. After *voir dire*, the judge determined that the jurors were not "biased, prejudiced, or unable to render an impartial verdict based on the statements of juror 73". The remaining jurors continued deliberations and returned a verdict in favor of the plaintiff. The trial court then denied defendant's motion for a mistrial.

On appeal, the Third Circuit Court prefaced its determination by stating:

> When jurors obtain extrinsic information during jury deliberations, a new trial is warranted if the objecting party likely suffered substantial prejudice as a result of the jury's exposure to the extraneous information. Nevertheless, a new trial is not required if the jury can remain impartial and unprejudiced and can confine its deliberations to the record evidence. Thus, when the trial court learns that [the jury] may have received extra-record information with a potential for substantial prejudice, [it] must determine whether the members of the jury have been prejudiced. We have long expressed a preference for individual voir dire questioning of each potentially tainted juror.

*Id*. at 761 (internal quotations and citations omitted).

The Court further stated that the "district court need not pursue any line of questioning on voir dire" and that "'any method is sufficient provided it is probative on the issue of impartiality.'" *Id*. (*quoting Waldorf v. Shuta*, 3 F.3d 705, 709 (3d Cir. 1993). The jurors individually testified that Juror 73's statements would not influence their decision, that they would remain impartial, and that they would completely disregard Juror 73's statements. As a result, the court held that the district court did not abuse its discretion in concluding the juror's misconduct would not prejudice the proceedings.

Here, the Court similarly concludes, after very careful consideration, that the jury will disregard any extraneous information presented to them, will remain impartial, and will base its verdict solely on the evidence that has been presented them in the courtroom. Accordingly, the Court also concludes that Plaintiff has not met her burden of showing that she will be prejudiced by the jury's exposure to the extraneous information.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion for a mistrial.

IT IS SO ORDERED.

S/Sean F. Cox
SEAN F. COX
UNITED STATES DISTRICT JUDGE

Dated: July 8, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 8, 2011, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager